In the Matter of the Petition of SAMUEL Z. KORFF, Appellant, to Set Aside the Election of LOUIS SCHIMKOWITZ as Secretary, Treasurer and Director of THE 126–128 MAIDEN LANE CO., INC.

LOUIS SCHIMKOWITZ and THE 126–128 MAIDEN LANE CO., INC., Respondents.

First Department, November 18, 1921.

Corporations — directors and officers — application to set aside election of officer and director — removal of officer and director void where by-laws contain no provision warranting same and there was failure to prefer charges justifying removal.

Where the by-laws of a corporation contain no provision warranting the removal of any officer or director there can be no removal from office without cause.

Accordingly, the removal of the petitioner as secretary and treasurer and as director of a corporation was without justification and was null and void, where it appears that he received no notice of any charges against him; that no cause was assigned why his offices should be declared vacant; that when the notice of the meeting was given and the meeting itself held he had been guilty of no act of misfeasance or non-feasance which would justify his removal from office, and, at most, he was in temporary financial difficulty in his own business which had no connection with the affairs of the corporation, and where nothing was disclosed save the desire upon the part of a codirector to obtain control of the corporation by taking advantage of the petitioner's temporary business embarrassment and to secure to himself the control of the stock and the affairs of the corporation.

APPEAL by the petitioner, Samuel Z. Korff, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 22d day of September, 1921, denying petitioner's summary application to set aside the election of one Louis Schimkowitz as secretary, treasurer and director of The 126–128 Maiden Lane Co., Inc.

*Henry Pearlman* [*Francis M. Scott* of counsel], for the appellant.

*Hartman, Sheridan & Tekulsky* [*Joseph J. Myers* of counsel], for the respondents.

DOWLING, J.:

Benjamin Mitchell was the owner of premises 126–128 Maiden Lane, in the borough of Manhattan, New York city, and being desirous of demolishing the buildings then upon the site and erecting a new office building thereupon, he applied to his brother-in-law, Samuel Z. Korff, who was engaged in the jewelry business in Philadelphia, Penn., and who agreed to aid him in his enterprise. Prior to the incorporation of the company hereinafter referred to, Korff had advanced to Mitchell for this purpose the sum of $10,386.37, without any security of any kind therefor. Mitchell, finding himself in difficulty, suggested that Korff should become his partner in the enterprise and that a company should be organized in which stock should be held equally by both and control thereof should be vested in them equally. Pursuant to this

arrangement the corporation was organized, known as " The 126–128 Maiden Lane Co., Inc.," under the laws of the State of New York, on June 22, 1920, the capital stock thereof consisting of 500 shares of the par value of $100 each, all common stock. By the certificate of incorporation, the number of directors was fixed at three, with the privilege of increasing the same to four, and the subscribers to the stock of the corporation were Korff, who took 149 shares; Mitchell, who took 149 shares, and the wife of the latter, Bertha Mitchell, who took 2 shares. It is averred that the reason for the creation of three directors at the outset, with the right to increase to four, was because at the time of the incorporation Korff's wife was about to give birth to a child and at the suggestion of the attorney for the incorporators the provision for the increase in directors was made so as to enable Korff's wife to become a director when she was restored to good health. By the certificate, Korff, Mitchell and the latter's wife were the directors for the first year. Thereafter Mrs. Korff was elected a director pursuant to the prior understanding. At the same time, being the first meeting of the stockholders, the stock was issued according to the certificate of incorporation, one of Mrs. Mitchell's shares being transferred to Mrs. Korff, so that the parties were equal owners of the stock and had equal votes upon the board of directors. At the same meeting the premises in Maiden Lane were bought from Mitchell for $50,000, subject to mortgages aggregating $52,000, the stock of the company being issued in payment to the nominees and appointees of the said Mitchell. Thereafter Korff advanced other amounts toward the construction of the new building, aggregating, as he claims, $14,056.79, making a total of $24,343.16 invested by him. Mitchell claims that the amount was only about $22,000. Mitchell also asserts that when a building loan for $35,000 was obtained Korff, who he claims had agreed to advance all the funds necessary to complete the alterations and repairs to the premises and to protect the mortgages in case they were called, agreed to pay the expense of $5,000 for obtaining the building loan, which agreement he says Korff has failed to carry out; he also claims that Korff has failed to pay notes amounting to $2,000 given as part of his contribution.

With matters in this condition, the Korff and Mitchell interests having equal ownership in the stock and equal votes upon the board of directors, Korff, who evidently had advanced moneys on this enterprise to the detriment of his regular business in Philadelphia, experienced financial difficulties and in the latter part of February, 1921, was obliged to throw himself upon the mercy of his creditors. Mitchell claims that on February 26, 1921, he went to Philadelphia to see Korff in relation to the sale of the latter's stock, for which he had fixed a price of $14,000, and there, as he swears, " the deponent found that Mr. Korff was apparently not in Philadelphia and after making numerous inquiries learned that Mr. Korff had disappeared from Philadelphia, apparently to avoid his creditors and also apparently with no intention of returning. The deponent again visited Philadelphia on March 2d and again made numerous inquiries with regard to Mr. Korff. He found that Mr. Korff's store was closed, and that neither Mr. Korff nor Mrs. Korff were at their residence. It appeared to be the general belief that Mr. Korff had simply ' skipped.' " On March fourth an involuntary petition in bankruptcy was filed against Korff. March seventh a receiver was appointed. March twentieth an order of publication was made.

But without waiting for any of these events, on the 1st day of March, 1921, evidently believing that Korff would be unable to return to either Philadelphia or New York in time to protect his interests, and simply as the result of what he claims to have learned on February twenty-sixth, that Korff was apparently not in Philadelphia, Mitchell caused a special meeting of the directors of the corporation to be called. The notice was dated March 1; 1921, and announced that a special meeting of the board of directors of the company would be held at the office of the company, which was in the city of New York, at two o'clock in the afternoon on March 3, 1921, as well as that " the object of the meeting is to declare vacant the office of Secretary and Treasurer now held by Samuel Z. Korff and to elect a new Secretary and Treasurer and a new director in lieu and stead of the said Samuel Z. Korff." The envelope addressed to Korff was postmarked as being mailed from New York city at six-thirty P. M. on March first. At that time Korff claims that he was in California for his health,

and that he went there with the knowledge of his creditors, and in this he is sustained by the affidavit of one of them who swears to his physical condition when he left for the west on February twenty-fifth, and who knew where he went. This creditor and two other creditors swear that they heard from him by mail from Los Angeles on March first and that he did not leave for the purpose of evading his creditors, and also that he had been in business for ten years and had a high rating in the trade. One of these creditors left Philadelphia March first and went to Los Angeles to offer Korff his assistance and that of the largest creditors. In fact Korff did make a settlement with his creditors and continued in business in Philadelphia. His leaving Philadelphia was not secret and the affidavit of Mitchell is significantly silent as to any reliable authority that he had for believing that Korff had absconded. His composition with his creditors was confirmed by the court in Pennsylvania on June 25, 1921. After giving notice of the special meeting of the board of directors at a time fixed which according to Mitchell's belief as to Korff's flight would have rendered the presence of Korff and his wife impossible, the board met pursuant to the notice at the office of the company in New York city on March 3, 1921, at two P. M., and there the following took place:

" Mr. Mitchell reported that the meeting had been called because of the fact that he had learned that Samuel Z. Korff, one of the directors of the company, had disappeared from his home and place of business in the City of Philadelphia.

" Mr. Mitchell further stated that he had personally, together with Mr. Louis Schimkowitz, visited Philadelphia on March 2nd, to make inquiries as to the whereabouts of Mr. Korff. This visit was made after having learned as far back as Saturday, February 26th, 1921, of Mr. Korff's disappearance, that he had, prior to the visit of yesterday, visited the City of Philadelphia on Saturday and Sunday, February 26th and 27th, and his inquiries made there led him to believe that Mr. Korff had disappeared from Philadelphia to avoid his creditors, and with no intention of returning; that he had thereupon called this meeting with the object of declaring the position held by Mr. Korff in the company,

vacant, and for the purpose of selecting a new Secretary and Treasurer and a new director."

The following resolutions were thereupon adopted:

" Upon motion of Mrs. Mitchell, which motion was seconded, it was unanimously declared that the office of Secretary and Treasurer held by Mr. Korff, be now declared vacant and also his position as Director of the corporation to be declared vacant.

" Mr. Mitchell moved that Mr. Louis Schimkowitz be elected as a director of the corporation to fill the vacancy created by the removal from office of Mr. Korff.

" Upon motion duly made, seconded and unanimously adopted, Mr. Louis Schimkowitz was declared elected as Director of the corporation.

" Upon motion of Mrs. Mitchell, duly seconded and unanimously adopted, Mr. Louis Schimkowitz was declared elected as Secretary and Treasurer of the corporation, to fill the vacancies created by the removal from office of Mr. Korff.

" Mr. Schimkowitz being present, accepted the positions of director, Secretary and Treasurer, and proceeded for the balance of the meeting to act as Secretary."

Schimkowitz, who was elected secretary and treasurer, is a brother-in-law of Mitchell, so that as the result of this action of the board the control of the corporation passed entirely into the hands of Mitchell.

Thereafter Mitchell caused to be issued to himself the balance of 200 shares of treasury stock which had not yet been issued by the corporation and received the certificate therefor. Then the 126–128 Maiden Lane Co., Inc., on May 16, 1921, acting by Mitchell as its president, conveyed the property to the Hershell Realty Corporation, of which Benjamin Mitchell also was president, and the latter corporation reconveyed the property to the 126–128 Maiden Lane Co., Inc., by deed dated June 21, 1921.

It is thus clear that Mitchell took advantage of what he thought were Korff's business difficulties to deprive him of his offices in the corporation of which he was then a half owner and to get possession of the remaining shares of the treasury stock, thus giving him stock as well as official control of the company.

Under the by-laws of the corporation it is provided that any vacancy occurring among the officers of the company caused by death, resignation or otherwise, shall be filled by the directors for the unexpired term of the office so vacated at any regular or special meeting of the board of directors. There is a similar provision as to filling vacancies in the board of directors caused by death, resignation or otherwise. The holding of such an election at a special meeting is authorized as to either officers or directors. But there was no vacancy in the officers or directors when this notice was given nor had any charge been preferred against Korff of malfeasance or nonfeasance in office. The by-laws contain no provision warranting the removal of any officer or director and without such warrant provided by the by-laws there could be no removal from office without cause. (*Raub* v. *Gerken*, 127 App. Div. 42; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194.) Here, Korff not only received no notice of any charges against him nor of any cause assigned why his offices should be declared vacant, but on the contrary it affirmatively appears that when the notice of the meeting was given and the meeting itself held, he had been guilty of no act of misfeasance or nonfeasance which would justify his removal from office. At most he was in temporary financial difficulty in his own business, which had no connection with the affairs of the corporation, and had left his home with the knowledge of some of his creditors to go to California for his health. He subsequently made a compromise with his creditors and continued in business without any apparent complaint by any one that he had not acted honestly and fairly in his business. No business of the corporation had arisen which required his vote and presence or his signature as an officer when the notice of the meeting was given or the meeting itself held. It is not shown that there was any probability of any question arising, or any matter requiring his attention, or anything which called for his presence, vote or signature in connection with the affairs of the corporation before he in fact returned. Upon this record nothing is disclosed save the desire upon the part of Mitchell to secure control of the corporation by taking advantage of Korff's temporary business embarrassment and to secure to himself control of the stock

and affairs of the corporation in violation of his agreement with Korff.

Under the circumstances disclosed by this record the attempted removal of Korff as secretary and treasurer and as director of the corporation was without justification in law or in fact and the attempted action was null and void.

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.